JAMES LOVE *et al.*, Appellants, *v.* ANN MOYNEHAN, Appellee.

## APPEAL FROM COOK.

Where the bill of exceptions does not show that exceptions were taken to the ruling of the court, and does not purport to contain all the evidence, this court will not review the decisions of the Circuit Court, in giving instructions or in refusing a new trial.

Love et al. *v.* Moynehan.

If a bill of exceptions states that, " the above is nearly all the testimony given," it is not sufficient to enable the Supreme Court to determine as to the correctness of the verdict.

In an action of trespass, to recover damages for entering a dwelling-house and carrying away goods, it is no defense, to prove that the plaintiff kept a bawdy house.

If a husband compels his wife to live separate from him, permanently, without her fault, and fails to make a suitable provision for her support, she may acquire property, control it and her person, contract, sue and be sued, as a *femme sole*, during the continuance of such condition.

THIS action was tried before MORRIS, Judge, and a jury, at November term, 1854, of the Cook Circuit Court. Verdict and judgment for the plaintiff for $350.

DEWOLF and DANIELS, for Appellants.

C. S. CAMERON, for Appellee.

SKINNER, J. This was an action of trespass, brought in the Cook circuit court, to the November term, 1852, by Ann Moynehan against Love and Love, to recover damages for the defendants entering the plaintiff's dwelling, and taking and carrying away her goods. The defendants plead in abatement, the coverture of the plaintiff.

To this plea, the plaintiff replied that, in the year 1847, her husband deserted and forsook her without cause, and departed from the place of their abode without leaving her any means of support, and from thence thereafter had not corresponded with her nor returned to her, nor in any manner provided for her support, and that during all said time, she had been compelled to rely wholly upon her own earnings for a support, and had by her own earnings, supported herself and family during said time, and had not heard from and did not know where her husband was, nor if he was still living; that during all said time of five years, she had necessarily acted and traded as a *femme sole*, and that the property upon which the trespasses complained of in her declaration were committed, had been acquired and earned by her since the said desertion of her husband; that her said husband had never been a resident of this State, but was, and ever had been, a resident of a foreign State.

The defendants took issue upon this replication, traversing all the facts therein alleged, and the plaintiff joined issue. The cause was tried by jury, and the issue was found for the plaintiff and damages assessed against the defendants.

The defendants moved for a new trial, which motion was overruled, and judgment was rendered upon the verdict.

The motion for a new trial was based upon the grounds that the court refused to admit certain evidence on the part of the

defendants; that the court gave improper instructions on the part of the plaintiff, and refused proper instructions on the part of the defendants; that the verdict was against the evidence, and that the damages were excessive. The bill of exceptions does not show that exceptions were taken at the time to the rulings of the court, in giving and refusing instructions, nor does the same purport to contain all the evidence, therefore this court will not review the decisions of the circuit court objected to upon instructions, nor the decision of the court overruling the motion for a new trial.

The language in the bill of exceptions is, " the above is nearly all the testimony given." This is not equivalent to a statement that, " this is all the evidence," or " the substance of the evidence," and is insufficient to enable this court to determine whether the verdict is against the evidence; or the damages excessive. *Buckmaster* v. *Cool,* 12 Ill. 74; 11 Ill. 72, 580, 586; *Sullivan* v. *Dollins,* 13 Ill. 85; *Duffield* v. *Cross,* ibid. 699.

The record shows that the defendants in the trial, offered to prove that one Spaids had sued one of defendants before a justice of the peace, to recover back rent by him paid for the premises occupied by the plaintiff, on the ground that this defendant, being the owner of the premises, and of whom Spaids had rented them, had turned the plaintiff out during the continuance of the lease.

And that defendants offered to prove that the plaintiff kept a bawdy house. This evidence was objected to by the plaintiff; the objection was sustained, and the defendants at the time excepted. The court properly rejected the evidence. The plaintiff was a stranger to the suit of Spaids, and could not be affected by it. As to the offer to prove that the plaintiff kept a bawdy house, the proof could be no justification or mitigation of a forcible entry into her dwelling, and taking and conveying away her goods.

The laws provide remedies for redress of wrongs, and for the punishment of offenders, and it is the duty of the citizen to resort to them. To take the law into one's own hands to redress supposed injuries, or to punish for public wrongs, is against the law and sound policy.

But it is contended that the replication is no answer to the plea of coverture, and that therefore, judgment ought not to be for plaintiff. This court will presume, as the bill of exceptions does not set out all of the evidence, that the facts alleged in the replication were proved, and if the facts alleged in the replication are sufficient to avoid the coverture alleged in the plea, in any view of this case, the judgment must be affirmed.

This is an important question, upon which the decisions in England and in this country, are conflicting, and is an open question in this court. It is a principle of the common law, that marriage merges the civil rights of the woman; that she is thereby deprived of her separate legal existence, and that the husband and wife are but one person. She cannot, therefore, generally, during the life of the husband, sue or be sued, contract or be contracted with. The law presumes the husband and wife live together; that the wife is provided for, and protected by the husband; that their interests are common and identical, and makes the husband liable for the wife's civil conduct while she remains under his control and protection.

When, by the fault of the husband, the wife is deprived of these and all benefits accruing to her from the marriage, of any substantial importance, it is but reasonable that she should be restored to her civil rights, at least, so far as is indispensable to that actual separate existence he has forced upon her.

The very necessity of cases which have arisen from time to time, has produced and established exceptions to the rule that a married woman can neither sue or be sued. These exceptions have been extended and narrowed according to the notions of courts and the temper of the times, and at this day, no uniform rule exists, at least in this country, as to when a married woman can and cannot sue and be sued.

Under these circumstances, we feel at liberty to adopt such rule as will best meet the exigencies of society, and accord with the current of modern authority. In the case of *Rhea et al.* v. *Rhermer,* 1 Peters R. 105, the supreme court of the United States held, that where the wife was left by the husband without maintenance or support; had traded as *femme sole,* and obtained credit as such, she was liable to be sued, and that the law was the same whether the husband had been banished for crime, or had voluntarily abandoned the wife.

In *Gregory* v. *Paul,* 15 Mass. R. 31, it is held, that where the husband deserted his wife in England, and she came to Massachusetts, and maintained herself as a single woman for five years, the husband being still in England, the wife might sue as a *femme sole.*

In the same State it is also held that a woman living separate from her husband, under a divorce, a *mensa et thoro,* may sue as a *femme sole.* *Dean* v. *Richmond,* 4 Pick. R. 461. The same court held that where the husband, living in New Hampshire, by his cruelty drove his wife from his house without providing for her, and she came to Massachusetts, and maintained herself for many years, the husband having re-married in a foreign

State, and married another woman, the woman might sue as a *femme sole*. *Abbott* v. *Bayley*, 6 Pick. 89.

In *Cornwall* v. *Hoyt*, 7 Conn. R. 427, it is held, that where the husband abandoned this country in time of war, and joined the enemy, the wife remaining in this country might contract as a *femme sole*. In the case of *Gregory* v. *Pierce*, 4 Metcalf's R. 478, the doctrine is recognized, that desertion of the wife by the husband, without providing for her, and without the intention of returning or living with her, will enable her to sue as a *femme sole*.

In the case of *Arthur and another* v. *Broadnax*, 3 Ala. R. 557, the court held, that where the husband had abjured the State, his wife remaining and doing business as a *femme sole*, she might sue upon and collect notes given her in her own name. The same doctrine is recognized in *Jones* v. *Stewart et al.*, 9 Ala. R. 855; and that to depart the State permanently, with the intention of not returning, is to *abjure* the State.

In *Roland* v. *Logan*, 18 Ala. R. 307, it is held that a married woman, having separated from her husband in another State, and removed to Alabama, and by her industry for several years maintained herself and family, the husband, meantime, residing in the State from whence she came, and asserting no claim to her acquisitions, may be regarded as a *femme sole*.

In South Carolina it is held, that if the husband depart from the State for the purpose of residing abroad, without intention of returning, such absence renders the wife competent to contract, sue and be sued, as a *femme sole*. 4 McCord's R. 148. The same doctrine is laid down in *Cassock and wife* v. *White*, 3 Mills Const. R. 282.

In Missouri it is held, that where the husband in another State, compelled his wife to leave him, and she went to Missouri, and resided many years, her husband remaining in another State, and acted as a *femme sole*, she might acquire property, execute a valid release, sue and be sued. *Rose* v. *Bates*, 12 Missouri R. 47.

In Pennsylvania it is held, that a married woman, whose husband was a mariner, and had been absent more than two years, leaving her no means of support, might be considered a *femme sole*, and receive a distributive share of her ancestor's estate. 2 P. A. Browne's R. 193.

In *Starrett* v. *Wynn*, 17 Serg. and Rawle, 130, it is held, that if a husband deserts his wife, and ceases to perform his marital duties, the acquisitions of property made by the wife during such desertion, are separate estate, and that she may dispose of such property by will or otherwise.

These cases are undoubtedly relaxations of the rigid rules of the ancient common law, or rather exceptions to those rules, and are in conflict with many other cases, but are sufficient to show that the view we take is not wholly novel.

In case of abandonment of the wife by the husband, the reason of the rule of the common law concerning the marital relations, ceases to exist, and with the reason, the rule should cease, when demanded by the necessities of justice.

Why should a woman, abandoned by her husband, and without means of living, not be permitted to provide for the necessities of herself and family by industry and economy, to acquire property, to control her own actions, and to protect her person and acquisitions? Illustrations of extreme hardship might be given without limit, but they are familiar to every observing person. It is true, the law provides for divorce from the bands of matrimony in certain cases, but many women have conscientious scruples against obtaining a divorce, and should not be compelled to violate conscience to acquire the mere ability of living by the fruits of their own labor.

The husband is discharged from his liability to provide for the wife, if she, without cause, abandons him, and why the wife being abandoned by the husband, should be kept continually subject to his plunder, or to that of his creditors, must be hard to answer. *Evans* v. *Fisher*, 5 Gil. 569; *McCutcheon* v. *McGahay*, 11 John. R. 282; *Rutherford* v. *Cox*, 11 Missouri R. 347.

We hold the law to be, that where the husband compels the wife to live separate from him, either by abandoning her, or by forcing her, by whatever means, to leave him, and such separation is not merely temporary and capricious, but permanent, and without expectation of again living together, and the wife is unprovided for by the husband, in such manner as is suited to their circumstances and condition in life, she may acquire property, control her person and acquisitions, and contract, sue and be sued in relation to them, as a *femme sole*, during the continuance of such condition.

But if such separation is the fault of the wife, she can acquire no rights thereby.

No question is raised as to the propriety of interposing the defense in abatement instead of in bar to the action, and no opinion is expressed upon that point.

*Judgment affirmed.*